[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14916
Non-Argument Calendar
_____

Agency No. A208-600-038

DHRUBA THAPA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(August 31, 2018)

Before NEWSOM, BRANCH, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Dhruba Thapa seeks review of the Board of Immigration Appeals' ("BIA")

final order affirming the Immigration Judge's ("IJ") denial of his application for

(1) asylum, (2) withholding of removal, and (3) protection under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). Thapa contends that Maoists harmed him on account of his political opinion, and therefore argues on appeal that the IJ and BIA erred by not granting his asylum and withholding-of-removal petitions. Thapa also asserts that he suffered torturous beatings to which the local authorities refused to respond, and he therefore additionally argues on appeal that the BIA and IJ erred in denying CAT relief.

## I

We review the BIA's decision as the final judgment, unless the BIA expressly adopted the IJ's decision. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). Where the BIA agrees with the IJ's reasoning, we will review the decisions of both the BIA and the IJ to the extent of the agreement. *Id*. Issues not reached by the BIA are not properly before us. *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1369 (11th Cir. 2011). Here, because the BIA agreed with the IJ's reasoning as to whether Thapa proved that any mistreatment he suffered was on account of a protected ground and whether Thapa was entitled to CAT relief, we review the decisions of both the BIA and IJ as to those findings. *Kazemzadeh*, 577 F.3d at 1350. The BIA did not, however, address the IJ's alternative finding (*i.e.*, that if Thapa had shown a nexus to a protected ground and

2

had shown past persecution, the IJ would nevertheless have found that the government had rebutted the presumption of a well-founded fear), and therefore that issue is not before us. *Seck*, 663 F.3d at 1369.

We review administrative findings of fact under the substantial-evidence test. *Antipova v. U.S. Att'y Gen.*, 392 F.3d 1259, 1261 (11th Cir. 2004). Under this test, we must affirm the BIA's decision—*i.e.*, deny the petition—"if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (internal quotations omitted). We "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). We will not reverse unless the evidence compels a reasonable fact finder to find otherwise. *Antipova*, 392 F.3d at 1261. "[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative finding." *Adefemi*, 386 F.3d at 1028. Under this highly deferential standard of review, we may not reweigh the evidence from scratch. *Antipova*, 392 F.3d at 1261.

## A

The government has the discretion to grant asylum if the alien establishes that he is a "refugee." INA § 208(b)(1)(A), 8 U.S.C. § 1158(b)(1)(A). A refugee is a person "who is unable or unwilling to return to, and is unable or unwilling to

avail himself or herself of the protection of, [his or her country of nationality] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). Generally, an applicant for asylum must establish either (1) past persecution on account of a protected ground, or (2) a well-founded fear of future persecution on account of a protected ground. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230–31 (11th Cir. 2005). The applicant must demonstrate that one of those protected grounds "was or will be at least *one central reason* for persecuting" him or her. INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i) (emphasis supplied). The protected ground "cannot be incidental, tangential, superficial, or subordinate to another reason for harm." *In Re J-B-N- & S-M-*, 24 I.&N. Dec. 208, 214 (BIA 2007). Where the evidence supports inferences of persecution based on a protected and unprotected grounds equally, the record does not "compel" us to hold that the persecution was based on the former. *Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 891 (11th Cir. 2007).

To be clear, persecution based on political opinion is based on the *victim's* political opinion, not the persecutor's political opinion. *Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 437-38 (11th Cir. 2004). The relevant question, moreover, is whether the persecutor is acting because of the victim's political opinion, not

4

simply whether the victim has a political opinion. *Id.* at 438. The applicant must provide some evidence, direct or circumstantial, of his persecutors' motives. *INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992). Evidence that is consistent with acts of private violence or that merely shows that a person has been the victim of criminal activity does not constitute evidence of persecution on account of a statutorily protected ground. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006).

**B**

To qualify for withholding of removal, an applicant must establish that his "life or freedom would be threatened in his country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). "The applicant must demonstrate that he would more likely than not be persecuted upon being returned to his country of origin." *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1308 (11th Cir. 2013) (internal quotation marks, citation omitted).

**C**

To qualify for CAT relief, the alien must prove that it is more likely than not that he would be tortured by, or with the consent or acquiescence of, a public official or person acting in an official capacity upon return to his country. *Najjar v. Ashcroft*, 257 F.3d 1262, 1303 (11th Cir. 2001). In assessing whether it is more

5

likely than not that an applicant would be tortured in the proposed country of removal, evidence that an applicant could relocate to a part of the country of removal where he is not likely to be tortured should be considered.  8 C.F.R. § 1208.16(c)(3)(ii).

## II

The record below does not compel the conclusion that Thapa's political opinion was one of the central reasons that the Maoists targeted him, and we must therefore respect the BIA's decision and deny his petition.  INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i).  Thapa testified that his attackers were Maoists, and that those attackers told him to stop working against the Maoists, join their party, and leave the Nepal Congress Party.  The record also shows that Thapa reported two Maoists' crimes to the police, leading to their arrests.  While it is possible that Maoists threatened and harmed Thapa because of his political views, the evidence equally supports an inference that Thapa's politics were incidental to the real reason for his being targeted by the Maoists—*i.e.*, exacting revenge for getting their members arrested.  *See In Re J-B-N- & S-M-*, 24 I.&N. Dec. at 214.

Lending credence to the latter inference, Thapa testified that, despite joining the Nepali Congress Party in 2003, his problems with the Maoists did not begin until he reported two Maoists to police in 2005, resulting in their arrests.  He further testified that some of his attackers in 2005 were the same individuals that

6

he previously reported to the police, and that while they attacked him they blamed him for their arrests. Moreover, Thapa's mother and sister, both of whom still live in Nepal and are members of the Nepali Congress Party, have never been physically attacked. Accordingly, because the record does not compel a finding that Thapa was persecuted on account of his political views, substantial evidence supports the denial of his applications for asylum and withholding of removal.

Substantial evidence also supports the IJ and BIA's denial of Thapa's application for CAT relief. The record shows that Thapa was only harmed in his hometown and that, from 2009 to 2015, Thapa lived in Kathmandu without incident, demonstrating that he could return to Nepal and avoid any likelihood of torture. *See* 8 C.F.R. § 1208.16(c)(3)(ii). Although the police failed to act after Thapa was attacked, the record does not compel the conclusion that public officials acquiesced in his torture, particularly because the police successfully arrested the Maoists who attacked Thapa's campus chief. Accordingly, substantial evidence supports the BIA and IJ's conclusions that Thapa was not entitled to CAT relief. We therefore deny his petition for review.

**PETITION DENIED.**